John **PERROTTE**, Plaintiff,

v.

Donald E. **PERCY** et al., **Defendants.**

No. 78–C–27.

United States District Court,
E. D. Wisconsin.

May 9, 1980.

David C. Niblack, State Public Defender by Elizabeth Alexander, Asst. State Public Defender, Madison, Wis., for plaintiff.

Bronson C. La Follette, Wis. Atty. Gen. by Nadim Sahar, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In a decision and order dated February 5, 1979, 465 F.Supp. 112, I granted the plaintiff's motion for partial summary judgment and entered an order permanently enjoining the defendants to

" . . . provide the following before removing the plaintiff or any member of the plaintiff class from work/study release status pursuant to § 56.065, Wis. Stats.: a written notice of the charges of misconduct at least 72 hours before the hearing; a written statement of the factfinder as to the evidence relied upon and the reasons for the removal from work/study release; and the opportunity to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals."

I also on that date entered an order directing the clerk of court to enter final judgment as to the plaintiff's claims for injunctive and declaratory relief.

The plaintiff has now moved for orders which would modify the injunctive relief previously entered. Specifically the plaintiff seeks

(1) an order prohibiting the defendants from suspending work or study release privileges of an inmate member of the plaintiff class prior to the due process hearing mandated by this court unless a designated staff member of the institution states in writing one of five specified reasons for such a pre-hearing termination;

(2) an order prohibiting the delay of the due process hearing mandated by this court for more than five days from the issuance of the conduct report, in all cases in which the inmate's work or study privileges have been suspended pending the hearing;

and (3) an order requiring that an inmate found not guilty of misconduct be immediately returned to his or her work or study release status.

█ Before considering the merits of the plaintiff's motion, I must consider the de-

fendants' contention that the motion must be denied as untimely.

Rule 60(b), Federal Rules of Civil Procedure, provides:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> .    .    .    .    .
>
> "(5) .    .    . it is no longer equitable that the judgment should have prospective application."

"This statement is little more than a codification of the universally recognized principle that a court has continuing power to modify or vacate a final decree." 11 Wright & Miller § 2961. A court must always be willing to redraft an injunctive order at the request of the party obtaining such relief in order to insure that the decree accomplishes its intended result. *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968). Accordingly, if the plaintiff has shown that events subsequent to entry of the permanent injunction have rendered that relief ineffective, his present motion for modification of the injunction would be timely.

In my decision and order dated February 5, 1979, I found that "[a]n inmate of the Wisconsin correctional system cannot constitutionally be deprived of his or her liberty interest in the continuation of work/study release status in the absence of a disciplinary due process hearing." 465 F.Supp. at 114. Based on that finding, I entered an order permanently enjoining the defendants to afford inmates due process hearings before depriving them of their interest in work/study release status.

The effect of that order would be destroyed if, in a given case, an inmate's work/study status were suspended pending a due process hearing and the hearing were delayed for so long that the inmate's work/study status was thereby jeopardized by his absence. Similarly, a delay in reinstating an inmate to work/study status following a finding of not guilty at a due process hearing could effectively jeopardize an inmate's participation in a particular job or educational program.

The plaintiff's attorney, in her affidavit, has cited two cases in which delays in the hearing or in reinstatement following a finding of not guilty occurred. The defendants have not disputed that the delays cited by plaintiff's attorney have occurred, nor do they dispute that such delays can diminish the protection which due process hearings are meant to afford. In fact, the defendants appear to recognize this point as they have proposed time limits for the holding of due process hearings in a draft, dated October 29, 1979, of their "Administrative Rules Relating to Work and Study Release."

The defendants argue that the existence of these draft rules eliminates the necessity of any further court imposed relief in this case. There is no certainty, however, that such rules will be approved by the necessary legislative bodies. Moreover, even if they are approved, in the absence of relief from the court there would be a time gap in which the due process rights of inmates on work/study status would be in jeopardy.

Accordingly, I find that modifications in the court's injunctive order are necessary to ensure that the effect of constitutionally mandated due process hearings is not avoided by delays in cases in which an inmate's work/study status has been suspended pending the hearing.

■ Both sides agree that under certain circumstances the state would be justified in suspending an inmate's work/study status pending a due process hearing. Both sides also recognize that the decision to suspend should be made only after a particular factual finding has been made. They differ, however, on what that finding should be.

In § 324.13(4)(d) of the defendants' draft rules the operative language is as follows:

> "(d) Pending the outcome of the fact finding hearing or the program review committee review, the division may take any action with reference to the inmate

that it considers *necessary for protection of the public* consistent with division rules. Such action may include temporary removal from placements or restoration to the placement." (emphasis added).

The plaintiff argues that a more specific finding should be required before an inmate's work/study status is suspended prior to a hearing. Specifically, the plaintiff contends that one of the following findings should be required before such a suspension:

(a) If the inmate remains on work or study release, the inmate will seek to intimidate a witness in a pending investigation or disciplinary action;

(b) If the inmate remains on work or study release, he or she will encourage others by example, expressly, or by his/her presence, to defy staff authority and thereby erode staff's ability to control a particular situation;

(c) If the inmate remains on work or study release, it will create a substantial danger to the physical safety of the inmate or another;

(d) If the inmate remains on work or study release, it will create a substantial ·danger that the inmate will try to escape from the institution; or

(e) If the inmate remains on work or study release, a disciplinary investigation will thereby be inhibited. The plaintiff's proposed standards are taken from proposed Health and Social Services Administrative Rule 303.10(4)(a) (draft dated October 8, 1979), which sets standards for the imposition of temporary lock-up prior to a disciplinary hearing.

The defendants have not stated a plausible reason why the specific standard they have adopted in another context should not also be adopted in determining whether an inmate's work/study status should be suspended prior to a due process hearing. In my judgment, these more specific standards will on one hand help to prevent the misuse of discretion in the suspension of state created rights, and on the other hand will

enable the defendants to fulfill their obligation of "protection of the public."

■ With regard to the time limit on the holding of due process hearings, § 324.-13(5)(b)3. of the defendants' draft rules provides:

"3. The due process hearing shall be held not less than 72 hours and not more than 14 days after service of notice that the inmate is charged with a violation. This period can be enlarged or diminished if the security director approves and the inmate agrees."

Section 324.13(4)(e) provides that the due process hearing should be expedited if the inmate's absence will result in the loss of the inmate's placement.

The plaintiff contends that delays in charging an inmate with a violation after he has been suspended from work/study status can lead to pre-hearing delays of more than fourteen days. Such lengthy delays can prejudice an inmate's participation in a work/study placement. The plaintiff proposes that the court enter an order ". . . prohibiting the delay of the due process hearing previously ordered for more than five days from the issuance of the conduct report, in all cases in which the inmate's work or study privileges have been suspended pending the hearing."

In response to the plaintiff's proposal, the defendants argue that witnesses for the hearings in question will often come from outside of the correctional system and that therefore a rigid five-day requirement will in some cases be difficult or impossible to meet.

In my opinion, both sides have raised valid points on the issue of timing which can be reconciled by entry of the following order:

In all cases in which an inmate's work or study privileges have been suspended pending a due process hearing, such hearing shall be held not more than 14 days after such suspension. This period can be enlarged or diminished if the security director approves and the inmate agrees.

216

Finally, the plaintiff seeks an order requiring that an inmate found not guilty of misconduct be immediately returned to his or her work or study release status. The defendants have not made any arguments in opposition to this particular proposed order, and therefore it will be entered.

Therefore, IT IS ORDERED that the plaintiff's motion for further relief be and hereby is granted.

IT IS ALSO ORDERED that the defendants be and hereby are permanently enjoined from suspending work or study release privileges of an inmate member of the class in this case prior to the due process hearing previously ordered unless a member of the institution staff states in writing one or more of the following:

(a) If the inmate remains on work or study release, the inmate will seek to intimidate a witness in a pending investigation or disciplinary action;

(b) If the inmate remains on work or study release, he or she will encourage others by example, expressly, or by his/her presence, to defy staff authority and thereby erode staff's ability to control a particular situation;

(c) If the inmate remains on work or study release, it will create a substantial danger to the physical safety of the inmate or another;

(d) If the inmate remains on work or study release, it will create a substantial danger that the inmate will try to escape from the institution; or

(e) If the inmate remains on work or study release, a disciplinary investigation will thereby be inhibited.

IT IS FURTHER ORDERED that in all cases in which an inmate's work or study privileges have been suspended pending a due process hearing, such hearing shall be held not more than 14 days after such suspension. This period can be enlarged or diminished if the security director approves and the inmate agrees.

IT IS FURTHER ORDERED that an inmate whose work or study privileges have been suspended pending a due process hear-ing and who is found not guilty of misconduct be returned to his or her work or study release status as soon as practicable following such finding.